UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA D. BAKER,                                    **REPORT AND**
                                                     **RECOMMENDATION**
                                    Plaintiff,
                                                     10-CV-00159(A)(M)
v.

AVI FOODSYSTEMS, INC.,

                                    Defendant.
_____

   Defendant AVI Foodsystems, Inc. ("AVI") has moved for summary judgment

[51].[1]   This motion, being dispositive, has been referred to me by Hon. Richard J. Arcara for a

Report and Recommendation [6].  Oral argument was held on October 24, 2011.  For the

following reasons, I recommend that AVI's motion for summary judgment be granted.


**BACKGROUND**

   Plaintiff commenced her employment with AVI on March 13, 2006, as the Office

Manager for its Buffalo, New York branch.  AVI's Statement of Material Facts [51-2], ¶1.

At the time, she was 46 years old.  Id., ¶3.  On October 16, 2007, plaintiff commenced a leave of

absence under the Family Medical Leave Act ("FMLA") for a herniated disk in her back.  Id.,

¶¶22-23.  On December 26, 2007, plaintiff submitted a work release from her physician

indicating that she could return to work on January 2, 2008, with the following restrictions,

which would continue through May 2, 2008:

_____
  [1]   Bracketed references are to CM-ECF docket entries.

- No lifting greater than 15lbs.

- No repetitive bending or twisting.

- No operation of vibratory/mechanical equipment.

- No sitting or standing  longer than two hours at a time (without a break).

- Sedentary work only.

- Working up to eight hours per day.  Id., ¶33.

AVI had an unwritten policy that "if an employee was subject to restrictions that prevented him or her from performing their full job duties following the exhaustion of FMLA . . ., the employee would be separated unless the restrictions stemmed from a work-related injury or the employee was disabled under the ADA or applicable state law and entitled to reasonable accommodation."  Harris Declaration [52-16], ¶10. When plaintiff attempted to return to work on January 2, 2008, she was not permitted to do so pursuant to this policy.  Plaintiff's Affidavit [58], ¶86.  According to plaintiff,  her January 2, 2008 physical therapy appointment was also cancelled due to a change in her insurance benefits by AVI.  Id.,  ¶¶88-89.

Plaintiff's 12 weeks of FMLA leave expired on January 8, 2009. AVI's Statement of Material Facts [51-2], ¶32.  On the following day, January 9, 2008, plaintiff was terminated from her employment with AVI by Michael Spayd, AVI's Leave Administrator, and Heather Harris, AVI's Employee Relations Manager, pursuant to AVI's policy because her medical restrictions prevented her from working more than eight hours per day and was not considered to be disabling under the ADA.  Id., ¶39.  When she was terminated, plaintiff was designated as eligible for re-hire, but never sought employment with AVI following her termination.  Id., ¶41.

Following an investigation, the New York State Division of Human Rights issued a Determination and Order on April 28, 2009, concluding that there was no probable cause to believe that AVI discriminated against plaintiff on the basis of race or her alleged disability. AVI's Statement of Material Facts [51-2], ¶51. Plaintiff commenced this case *pro se* by Complaint filed March 1, 2010 [1]. After plaintiff was assigned counsel [20], she filed a Second Amended Complaint [36], alleging failure to accommodate and discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et  seq*. ("ADA"), racial discrimination in violation of  Title VII of the Civil Rights Act, 42 U.S.C. §2000-e, *et seq*. ("Title VII"), violation of the FMLA, and age discrimination in violation for the New York State Human Rights Law, NY Executive Law §296 ("HRL").  Following the close of discovery, AVI moved for summary judgment [51].

Aside from this case, the Equal Employment Opportunity Commission ("EEOC") commenced suit against AVI in the Southern District of Ohio, Eastern Division, which resulted in a Consent Decree approved by the Court on July 28, 2009.  Consent Decree [52-20].  The Consent Decree applied to individuals who were separated from employment with AVI since April 11, 2006 "after their FMLA . . . leave had been exhausted, and who (i) either were ready to return to work immediately or would have been ready to return to work with extended or additional leave as a reasonable accommodation and (ii) could have performed the essential functions of the job without or without reasonable accommodation but (iii) were not allowed to return to work because they had medical restrictions."  Id., ¶12(a).  As a member of this class, plaintiff was offered $1,000 in compensatory damages or re-employment with AVI.  Id., ¶12(b),

Appendix B.  Plaintiff elected to take the $1,000 payment.  AVI's Statement of Material Facts

[51-2], ¶47.


## ANALYSIS

### A.      Summary Judgment Standard

   The standard to be applied on a motion for summary judgment in this Circuit is

well settled.  "Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  The party seeking summary judgment has the burden to demonstrate that no genuine issue

of material fact exists.  In determining whether a genuine issue of material fact exists, a court

must examine the evidence in the light most favorable to, and draw all inferences in favor of, the

non-movant.  Summary judgment is improper if there is any evidence in the record that could

reasonably support the jury's verdict for the non-moving party."  Ford v. Reynolds, 316 F. 3d

351, 354 (2d Cir. 2003).


### B.      Should AVI's Statement of Material  Facts [51-2] be Deemed Admitted?

   Loc. R. Civ. P. ("Local Rule") 56(a)(2) states that  "[e]ach numbered paragraph in

the moving party's statement of material facts will be deemed admitted for purposes of the

motion unless it is specifically controverted by a *correspondingly numbered* paragraph in the

opposing statement" (emphasis added).  *See*  Fed.R.Civ.P. ("Rule") 56(e) ("If a party . . . fails to

properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

consider the fact undisputed for purposes of the motion").   Plaintiff's Counterstatement of

Material Facts makes no attempt to address AVI's Statement of Material Facts by use of

correspondingly numbered paragraphs [80].

Recognizing that "the local rule does not absolve the party seeking summary

judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local

Rule . . .  statement is not itself a vehicle for making factual assertions that are otherwise

unsupported in the record", I accept AVI's Statement of Material facts as true for purposes of this

motion, where supported by admissible evidence.  Giannullo v. City of New York, 322 F.3d 139,

140 (2d Cir. 2003).


**C.      Should Plaintiff's Affidavit [58] be Disregarded?**

AVI argues that plaintiff's affidavit should not be considered because "it brazenly

ignores the requirement of [Rule] 56(e)".  AVI's Reply Memorandum of Law [85], p.14.

According to AVI, plaintiff's affidavit "(1) asserts allegations that contradict her own deposition

testimony . . . ; (2) alleges facts for which plaintiff has no personal knowledge or are otherwise

speculative, conclusory, or argumentative . . .; and (3) relays a series of immaterial and

inadmissible statements and emotional appeals that are not relevant to the lawsuit".  Id., p. 15.

Affidavits submitted in connection with summary judgment motions "must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant . . . is competent to testify on the matters stated." Rule 56(c)(4).  "Accordingly, a court

*may* strike portions of an affidavit that are not based upon the affiant's personal knowledge,

contain inadmissible hearsay or make generalized and conclusory statements." Sandor v. Safe

Horizon, Inc., 2011 WL 115295, *6 (E.D.N.Y. 2011) (emphasis in original).  However, "Rule 56(e) [now Rule 56(c)(4)] defects normally are waived where the party opposing the summary judgment motion fails to make a motion to strike before the district court."  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir.1988).  See Lakeview Outlets, Inc. v. Uram, 1997 WL 289221, *3 (N.D.N.Y.1997) ("Defendants are not moving to strike Grant's affidavit, however, and thus they are deemed to have waived this alleged Rule 56(e) defect").

Despite  AVI's failure to file a formal motion to strike plaintiff's affidavit, I will "simply disregard any material that does not comply with Rule 56(e)", without "conduct[ing] a line-by-line analysis".  Primmer v. CBS Studios, Inc., 667 F.Supp.2d 248, 254 (S.D.N.Y. 2009).  "Moreover, to the extent [plaintiff's]  affidavit uses conclusory or argumentative  language, the Court will not make the suggested inferences simply because Plaintiff has suggested them." Id., at 254-255.  Because "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony", I will also disregard these aspects of plaintiff's affidavit.  Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 104 (2d Cir. 2010).  See Needle v. Alling & Cory, Inc., 88 F.Supp.2d 100, 106 (W.D.N.Y. 2000) (Larimer, J.)("Notwithstanding his prior testimony and the other documentary evidence, however, plaintiff now maintains to the contrary that he 'could have performed his job despite amputations.'. . .  This directly contradicts his prior deposition testimony, and is insufficient to create a question of fact on this issue").

**D.      Plaintiff's ADA Claims**

**1.      Are Plaintiff's Claims Barred by Res Judicata?**

AVI's estoppel arguments are predicated on the Consent Decree, which purports to "resolve[ ] all claims in dispute in this lawsuit". Harris Declaration [52-16], Ex. 4. Under the Consent Decree, plaintiff was identified as class member, and was notified by letter dated August 21, 2009 from AVI that "[i]f you do not wish to be considered for a position with AVI at this time . . . . [,] [y]ou will then receive $1,000 pursuant to the Consent Decree entered with the [EEOC]" [71].  It is undisputed that plaintiff received  a $1,000 payment pursuant to the Consent Decree.  AVI's Statement of  Material Facts [51-2], ¶47.

"Res judicata will preclude relitigation of a claim where the earlier decision was a final judgment on the merits rendered by a court of competent jurisdiction, in a case involving the same parties or their privies, where the same cause of action is asserted in the later litigation." Amalgamated Sugar Co. v. NL Industries, Inc., 825 F.2d 634, 639 (2d Cir.), cert. denied, 484 U.S. 992 (1987).  "The general rule is that a final consent decree is entitled to res judicata effect." However, "where the EEOC has entered a consent decree without first being certified as a class representative pursuant to Fed.R.Civ.P. 23, principles of res judicata do not preclude non-parties to the EEOC consent decree from bringing suit against the same employer for the same relief." E.E.O.C. v. Federal Express Corp., 268 F.Supp.2d 192, 201 (E.D.N.Y. 2003) (citing General Telephone Co. v. EEOC, 446 U.S. 318, 333 (1980) (although  the EEOC may seek classwide relief under Title VII without being certified as the class representative under Rule 23, "we are unconvinced that it would be consistent with the remedial purpose of the statutes to bind all

'class' members with discrimination grievances against an employer by the relief obtained under an EEOC judgment or settlement against the employer").

AVI argues that "[t]his case is different" because "[p]laintiff, by her own choice, accepted a monetary settlement to resolve her ADA claims.  The EEOC did not bind Plaintiff - she bound herself." AVI's Reply Brief [85], p. 3.  I disagree. While the Consent Decree gave plaintiff the option of accepting either $1,000 or a job at AVI, she was given no choice as to whether or not to be bound by its terms. Consent Decree [52-20], ¶¶13-14.  Nothing in the record suggests that plaintiff had any role in the EEOC's suit against AVI or its settlement, much less that she was even aware of the suit.  Privity has been found to exist between a plaintiff and the EEOC where the plaintiff was one of the charging parties.  *See* Matthews v. NPMG Acquisition Sub, LLC, 2011 WL 4068866, *3 (D.Ariz. 2011) (concluding that charging parties, who were specifically named in the consent decree as having resolved their claims, were barred from commencing suit); Adams v. Proctor & Gamble Manufacturing Co., 697 F.2d 582, 583 (4th Cir. 1983), cert. denied, 465 U.S. 1041(1984) ("A charging party has an unqualified right to intervene in the EEOC's action.  If he wishes to participate in settlement negotiations or to have the right to reject any settlement agreement negotiated by the EEOC, he may fully protect himself by intervening.  If he does not intervene, it is not unfair to him to conclude that he placed the conduct of the litigation entirely upon the EEOC and expressed a conclusive willingness to be bound by the outcome, whether or not the outcome was negotiated.").  However, plaintiff was not a charging party under the Consent Decree.  [52-20], ¶¶4-9, 20.

The cases relied upon by AVI are also readily distinguishable.  Both King v. South Cent. Bell Telephone and Telegraph Co., 790 F.2d 524, 526 (6th Cir. 1986) and Kemp v.

Birmingham News Co., 608 F.2d 1049, 1051-1055 (5th Cir. 1979), involve class actions

pursuant to Rule 23.  "In a class action, . . . a person not named as a party may be bound by a

judgment on the merits of the action, if she was adequately represented by a party who actively

participated in the litigation."  Taylor v. Sturgell, 553 U.S. 880, 884 (2008).  However, "the

EEOC is not an exact or even close counterpart to the class representative (and class lawyer) in a

Rule 23 class action. The EEOC's primary role is that of a law enforcement agency . . . .  [T]he

EEOC does not sue as the representative of the discriminated-against employees who may benefit

from the relief it obtains".  In re Bemis Company, Inc., 279 F.3d 419, 421- 422 (7th Cir. 2002).

Alternatively, AVI argues that  plaintiff's ADA claims fail on the merits because

she was not disabled at the time of her termination, was not able to perform the essential

functions of her job, and there is no evidence that she was terminated because of her disability.

AVI's Memorandum of Law [51-1], pp.14-22.

Claims of discrimination under the ADA are subject to the burden-shifting

analysis articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  *See*

Batlidze v. Harris Beach, LLP, 361 Fed.Appx. 216, 216 (2d Cir. 2010) (Summary Order). Under

that framework, the  plaintiff bears the initial burden of establishing a *prima facie* case.

McDonnell Douglas, 411 U.S. at 802.  If the plaintiff succeeds in establishing a *prima facie* case,

the employer must "articulate some legitimate, nondiscriminatory reason" for the alleged adverse

employment decision.  Id.  If the defendant articulates a non-discriminatory reason, "the

McDonnell Douglas framework-with its presumptions and burdens-disappear [s], . . . and the

sole remaining issue [is] discrimination vel non."  Reeves v. Sanderson Plumbing Products, Inc.,

530 U.S. 133, 142-43, (2000).  "Although the presumption of discrimination 'drops out of the

picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.' " Id.  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000), cert. denied, 540 U.S. 811 (2003).  *See* Hongyan Lu v. Chase Investment Services Corp., 412 Fed.Appx. 413, 415-416  (2d Cir. 2011)(Summary Order).


    **2.**       **Has Plaintiff Established a *Prima Facie* Case of Discrimination?**

      "At the summary judgment stage, [plaintiff's] burden is not one of demonstrating discrimination by a 'preponderance of the evidence.'  Rather, [plaintiffs] need only 'establish a *prima facie* case by producing evidence sufficient to support a reasonable inference of discrimination.'" Adams v. Rochester General Hospital, 977 F. Supp. 226, 231 (W.D.N.Y. 1997) (Feldman, M.J.).  To establish a *prima facie* case of disability discrimination plaintiff "must show that (1) [defendant] is subject to the ADA; (2) he was a person with a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Shannon v. New York City Transit Authority, 332 F.3d 95, 99 (2d Cir.

2003).[2]  "Claims asserting the failure-to-accommodate theory of discrimination must satisfy a variation of the basic *prima facie* standard."  Moss v. The Port Authority of New York and New Jersey, 2006 WL 3392693, *4 (S.D.N.Y. 2006).  Although the first two elements are identical for establishing a *prima facie* claim of discrimination based on a failure to accommodate, such a claim instead requires at steps three and four that plaintiff establish that, with a reasonable accommodation, she could perform the essential functions of the position and that her employer refused to make such an accommodation.  *See* Bresloff-Hernandez v. Horn, 2007 WL 2789500, *8 (S.D.N.Y.2007).

### a.    Did Plaintiff Suffer From a Qualifying Disability?

The ADA defines a "disability" as:

"(A)    a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B)    a record of such an impairment; or

(C)    being regarded as having such an impairment."  42 U.S.C. §12102(2).

---

[2]    Although the ADA Amendments Act ("ADAA") was enacted in 2008, the ADAA is not applicable in this case. "Federal courts have uniformly decided that the ADAA will not be retroactively applied to conduct that preceded its effective date. . . . Because all relevant conduct is alleged to have occurred prior to January 1, 2009, the Court will not apply the ADAA to [plaintiff's] claims." Parada v. Banco Industrial de Venezuela, C.A., 2011 WL 519295, *4 n.4 (S.D.N.Y. 2011).  "Similarly, changes to the 29 C.F.R. §§1630.1 and 1630.2 went into effect on May 24, 2011. . . .  Nothing in those regulations clearly states they are to have retroactive effect; in fact, the revisions were necessitated by the Amendments   Act. . . . Accordingly, the regulations will not be retroactively applied, and all citations to the regulations refer to the pre–2011 Code of Federal Regulations edition."  Tate v. Ancell, 2011 WL 3859913, *4 n.3  (S.D.Ill. 2011).

Plaintiff does not attempt to establish that she was disabled by arguing that there was a record of impairment.  Instead, she argues that she had physical impairment that substantially limited a major life activity and was regarded by AVI as having a disability. Plaintiff's Memorandum of Law [78], pp.7-12.

A major life activity is substantially limited when an individual is "unable to perform a major life activity that the average person in the general population can perform", or is "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity."  A "major life activity" is denied as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR §1630.2(i).

In determining whether an individual is substantially limited in a major life activity, courts consider "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. §1630.2(j)(2).  The terms "major life activity" and "substantially limited" "need to be interpreted strictly to create a demanding standard for qualifying as disabled".  Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002).

AVI does not dispute that plaintiff suffered from an impairment, a "temporary back condition caused by a herniated disk".  AVI's Memorandum of Law [51-1], p.16.  However, it relies on plaintiff's deposition testimony to establish that she was not disabled by this impairment at the time of her termination.  Id.  Plaintiff testified that her condition started to improve

"[p]robably around end of November, December."  Plaintiff's Deposition Transcript [52-4], p.

111.  According to plaintiff, she agreed with the doctor's decision that she was able to return to

work.  Id., p.116.  The following exchange occurred regarding  plaintiff's limitations at the time of

her termination:

> "Q. As of early January 2008 did your back condition limit you in any way?
>
> A.  No, not really.  Not a whole lot. I mean it would come and go.
>
> Q.  When it came, how would it affect you?
>
> A.  I would just take a pill and it would ease off."  Id., p.117.

Plaintiff also testified that as of early January 2008, she was able to walk, sit,

stand, work, drive, lift items so long as they were not "really that heavy",  care for herself, and do

the laundry and wash the dishes when she was having a "good day".  Id., pp.118-19.  She further

testified that her back condition did not affect her ability to hear, speak, think, breathe, learn or

concentrate in early January 2008.  Id. When asked if there were any things she could not do

because of her back condition in early January 2008, plaintiff responded "[n]o."  Id., pp.119-20.

In fact, after plaintiff was advised that "disabled" meant "limited in any way by [her] back injury",

she testified that she only considered herself disabled from October 2007 "[u]ntil January or

December 31st."  Id., p.48.

Plaintiff argues that the court should "decline to consider" her response to the

question of when she was disabled because it called for a legal conclusion, that her deposition

testimony "contradicts medical advice and creates an issue of fact in and of itself", and that AVI's

claim that her restrictions expired on May 2, 2008 is not accurate, as her restrictions were in place

until then and may have been continued thereafter.  Plaintiff's Memorandum of Law [78], p. 12.

None of these arguments create a triable issue of fact.

  As discussed above, plaintiff was not asked to give a legal conclusion as to when she considered herself disabled as defined by the ADA.  Rather, she was expressly instructed that "disabled" meant "limited in any way by [her] back injury".  Plaintiff's Deposition Transcript [52-4], p.48. Although plaintiff's testimony concerning the absence of physical limitations she experienced in early January 2008 may be considered contradictory to the restrictions imposed by her physician ([52-8]), there is nothing in the record to establish that these restrictions continued beyond May 2, 2008.

  Recognizing that "the ADA does not guard against discrimination based upon *any* physical . . . impairment but only those impairments that are significant", Reeves, 140 F.3d at 152 (emphasis in original),  I conclude that none of plaintiff's physical impairments constitute a substantial limitation on a major life activity.  "Temporary conditions  . . . , with no residual, substantial limitations do not constitute a disability within the meaning of the ADA." Joseph v. North Shore University Hospital, 2011 WL 573582, *7 (E.D.N.Y. 2011).  The record establishes that, at most, plaintiff's limitations from her back condition lasted from October 2007 through May 2008.  Physical limitations of this duration are insufficient to constitute a disability for purposes of the ADA.  *See* Feeley v. New York City Police Department, 2001 WL 34835239, *6 (E.D.N.Y. 2001) (an approximately 7-month period of sick leave and restricted duty was temporary in nature and not a disability within the meaning of the ADA).

  Plaintiff speculates that the restrictions "*may* have been continued thereafter", but she failed to obtain any additional medical treatment for her back due to the cessation of her

benefits.  Plaintiff's Affidavit [58], ¶91; Plaintiff's Memorandum of Law [78], p.12 (emphasis

added). While it does appear that AVI prematurely terminated her insurance ([69]), which was

later corrected (Harris Declaration [52-16], ¶15), plaintiff admits that this only resulted in her

having to cancel a January 2, 2008 physical therapy appointment.  Plaintiff's Deposition

Transcript [52-4], p.203. This is insufficient to raise a triable issue of fact as to the duration of her

restrictions, especially given plaintiff's own testimony that she was no longer limited by her back

injury as of early January 2008.

      Although plaintiff states that her back "continues to cause [her] extreme pain" and

that "[w]ithin the last month, [her] back has [her] so much pain that [she] cannot do any

housework like cleaning", there is no medical evidence in the record supporting any residual

effects from her back condition, let alone substantial limitations.  "Plaintiff's mere allegation that

she was 'disabled,' without supporting medical evidence, is insufficient to create a genuine issue

as to whether she was substantially limited in any major life activity." DeMarco v. CooperVision,

Inc., 2009 WL 656337, *12 (W.D.N.Y. 2009)(Siragusa, J.).

      Additionally, the only limitation that prevented plaintiff from returning to work

was her inability to work overtime.[3]  However, "federal district courts have . . .  been unreceptive

to arguments that a plaintiff is substantially limited in the major life activity of working when the

plaintiff can perform her duties within her field on a full-time basis." Eibest v. Planned

Parenthood of Stark County, 94 F.Supp.2d 873, 877 (N.D.Ohio 2000) (collecting  cases). *See*

Noriega-Quijano v. Potter, 2009 WL 6690943, *5 (E.D.N.C. 2009)("[P]laintiff's physicians have

_____

[3]      From plaintiff's response to AVI's motion, it appears that the only major life activity she
is alleging was substantially limited was her ability to work.  Plaintiff's Memorandum of Law [78], pp. 7-
8.

restricted him only from working more than 8 hours per day and 40 hours per week.  These

restrictions do not rise to the level of a substantial limitation on a major life activity, even when

those terms are broadly construed").  Nor has plaintiff demonstrated that the other restrictions her

physician imposed excluded her from a broad spectrum of jobs.  *See* Conant v. City of Hibbing,

131 F.Supp.2d 1129, 1135 (D.Minn. 2000), aff'd, 271 F.3d 782 (8th Cir. 2001)("We recognize

that Conant was subjected to a lifting restriction, in conjunction with a limitation on his repetitive

bending and squatting, but such a combination of constraints, without a showing that they

excluded Conant from a broad spectrum of jobs, is an insufficient showing to qualify him as being

'disabled' within the meaning of the ADA"); Piascyk v. City of New Haven, 64 F.Supp.2d 19, 30

(D.Conn. 1999), aff'd,  216 F.3d 1072 (2d Cir. 2000) (Summary Order) ("Because the

[physician's] statement indicates that plaintiff could lift up to fifteen pounds, and because it lacks

any indication that the fifteen pound limitation was permanent, it cannot support a finding of a

substantial limitation within the meaning of the ADA"); Parada, 2011 WL 519295, *6 ("Because,

as a matter of law, an impairment which limits the ability to sit for long periods of time is not

recognized as a substantial limitation, Parada is not disabled pursuant to the ADA"); Colwell v.

Suffolk County Police Department, 158 F.3d 635, 644 (2d Cir. 1998), cert. denied, 526 U.S. 1018

(1999) (difficulty standing for more than one hour not a substantial limitation).

   Alternatively, plaintiff argues that "AVI's complete failure to address whether it

regarded [plaintiff] as having a disability is a red herring because this is the quintessential

'regarded as' disability case."  Plaintiff's Memorandum of Law [78], p.8.  AVI responds that "she

cannot advance a regarded as claim without alleging such a claim in her complaint" and that this

failure "prevent[ed] AVI from conducting discovery on such a claim."  AVI's Reply

Memorandum of Law [85], pp.5-6. I agree with AVI.  Since plaintiff raised her "regarded as"

claim for the first time in opposition to summary judgment, AVI "did not have an opportunity to

fashion discovery toward defense of that claim. . . . [A]lthough the claims are similar, the

'regarded as' claim implicates additional facts that would be otherwise unnecessary to explore."

DeCastro v. Lahood, 2009 WL 1067030, *8 (E.D.N.Y. 2009).[4]  "It simply will not do for a

plaintiff to fail to plead with adequate specificity facts to support a regarded as claim,

all-the-while hoping to play that card if her initial hand is a dud."  Rivera v. Pfizer,

Pharmaceuticals, LLC, 521 F.3d 76, 85 (1st Cir.), cert. denied, 129 S.Ct. 180 (2008).  Beyond

plaintiff's failure to plead her "regarded as" claim, plaintiff testified at her deposition that she did

not know if AVI considered her disabled. Plaintiff's Deposition Transcript [52-4], p.163. Thus,

AVI could not have been on notice of such a claim.


        **b.      Was Plaintiff Qualified to Perform the Essential Functions of Her Job
                With or Without a Reasonable Accommodation?**

        AVI argues that even if plaintiff was disabled, she was not qualified for her

position of Office Manager at the time of her termination because "she was unable to perform the

essential job function of working more than eight hours in a day." AVI's Memorandum of Law

[51-1], p.19.  In response, plaintiff argues that "no one from AVI ever discussed with [her] that

working overtime or in addition to eight hours a day was mandatory and/or essential until after

---

        [4]      *Compare with* Pugliese v. Verizon New York, Inc., 2008 WL 2882092, *11 n. 12
(S.D.N.Y. 2008)("The Court is unaware of any authority, and Defendant has provided no authority, that
would require Plaintiff to specify in her Complaint whether her claim is limited to the statutory definition
of disability in subsection (A) or whether her claim might also be properly considered a 'regarded as
disabled' claim").

AVI terminated [her]" and "there is no evidence that [plaintiff] could not have made up additional work on the weekends."   Plaintiff's Memorandum of Law [78], pp.13-14.

"'Essential functions' are defined under EEOC regulations to mean the 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" Shannon, 332 F. 3d at 100.  *See* 29 C.F.R. §1630.2(n).  An essential function "encompasses more than core job requirements; indeed, it may also include scheduling flexibility".  Rehrs v. The Iams Company, 486 F. 3d 353, 358 (8th Cir. 2007).  Evidence of whether a particular function is essential includes written job descriptions and  the work experience of others in the job.  29 C.F.R. 1630.2(n)(3).  However,  I "must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position."  Shannon, 332 F.3d at 100. "But ultimately, the question whether a task constitutes an essential function depends on the totality of the circumstances." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 120 (2d Cir. 2004).

The need to work more than eight hours per day was not part of the job description for plaintiff's position [61], and plaintiff was advised during her interview  that she would only "[o]ccasionally [work] some overtime". Plaintiff's deposition transcript [52-4], p.66. However, she conceded at her deposition that she worked 50 to 60 hours a week because this was necessary to perform her duties. Id., p.102. This is reflected in plaintiff's time records, which demonstrate that during her employment with AVI she worked in excess of an 8-hour day 91% of the time. Harris Declaration [52-16], ¶5. Sarahann Stroke, who immediately preceded plaintiff as Office Manager, worked in excess of eight  hours per day 93% of the time, and plaintiff's successor, Kelly Casey, worked in excess of eight  hours a day 95% of the time.  Id., ¶¶6-9.

By all accounts, the Officer Manager position is demanding. According to the manager of AVI's Buffalo branch, "the volume of business managed by the Buffalo branch has necessitated that the Office Manager be available to work Monday through Friday, from 7:00 -7:15 am until business is completed at the end of the day.  This schedule requires the Office Manager to be available and able to work in the office in excess of eight-hours per day. . . .  [I]f  the Office Manager is unable to work beyond an eight-hour workday, the Buffalo branch does not have any other full-time office employee who is scheduled . . . and available to perform the Office Manager's responsibilities in addition to his/her own duties."  Stworzydlak Declaration [52-22], ¶3.  Likewise, plaintiff testified that she did not work a set schedule, leaving work "when [she] got done with whatever needed to be done for that day."  Plaintiff's Deposition Transcript [52-4], p. 102.  A majority of her time was spent "handling phone issues", but "[t]here was nobody there to cover the phones. There was nobody there to cover the office. There was nobody there to cover anything." Id.,  pp. 88, 327.

"Where the demands of the job require working overtime on a regular basis . . . courts have held that overtime constitutes an essential function of the job." Zaborowski v. Sealright Co., 2002 WL 1585521, *4 (N.D.N.Y. 2002).  Even though the necessity of  regularly working more than eight hours per day was not communicated to plaintiff at the outset of her employment, the evidence establishes that the demands of plaintiff's position necessitated her working more than eight hours per day on a regular basis.  Therefore,  I conclude that working more than eight hours per day was an essential function of the Officer Manager position.  Likewise, I conclude that plaintiff's failure to accommodate claim fails because "a reasonable accommodation can never involve the elimination of an essential function of a job".  Shannon, 332 F. 3d at 100.

Plaintiff's arguments do not compel a different result.  While plaintiff argues that in lieu of working more than eight hours per day during the week, she could have performed any additional work on Saturdays, this would not alleviate the necessity of having an Office Manager present Monday through Friday until business was completed for the day.  Likewise, plaintiff's reliance on Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113 (2d Cir. 2004) (plaintiff's Memorandum of Law [78], p.14) is misplaced. In  Rodal, the Second Circuit held that the ability of an anesthesiologist to work night and weekend duty was not an essential function of his position, despite the fact that he had always worked these hours before his illness.  369 F.3d at 121. However, unlike the circumstances presented here, Rodal turned on the  the fact that the plaintiff's employer  had "accommodated [his] request to be relieved of this duty for several months . . .  and, apparently, would have been prepared to do so permanently had the parties reached agreement on a compensation modification," thereby evidencing that this was not an essential job function.  Id.

3.      **Did Plaintiff Satisfy Her Burden of Bringing Forward Some Evidence of Pretext?**

Even if plaintiff could make a *prima facie* showing of disability  discrimination, AVI argues that plaintiff  fails to offer any evidence of pretext.  AVI's Memorandum of Law [51-1], p.22.   According to AVI, "conspicuously absent from [plaintiff's] brief is any discussion of pretext with respect to her disability, race or age discrimination claims." AVI's Reply Memorandum of Law [85], p. 13.

The only evidence of pretext plaintiff appears to rely upon is AVI's  alleged "per se discriminatory" policy of permitting only certain employees from returning to work following a

FMLA leave.   Plaintiff's Memorandum of Law [78], p.1.  Under the ADA, "employers are

obligated *only* to provide a *reasonable accommodation* which enables a *disabled* employee to

perform the essential requirements of the employee's job." <u>Schwertfager v. City of Boynton Beach</u>,

42 F.Supp.2d 1347, 1364 (S.D.Fla. 1999) (emphasis added).  As discussed above plaintiff was

neither  disabled under the ADA nor seeking a reasonable accommodation. Far from being *per se*

discriminatory, AVI's policy of terminating the employment of those individuals who were unable

return to their full duties unless disabled under the ADA and entitled to reasonable

accommodations (Harris Declaration [52-16], ¶10) does not run afoul of  AVI's obligations under

the  ADA to provide reasonable accommodations to disabled employees.  Therefore, I conclude

that plaintiff has not established that AVI's actions were a pretext for discrimination.

## E.      Plaintiff's Title VII Claim

Discrimination claims under Title VII are also analyzed under the <u>McDonnell</u>

<u>Douglas</u> burden-shifting framework.  *See* <u>Platt v. Incorporated Village of Southampton</u>, 391

Fed.Appx. 62, 64 n.1 (2d Cir. 2010) (Summary Order).  "Under the <u>*McDonnell Douglas*</u>

framework, the plaintiff must first establish a *prima facie* case of discrimination by showing that:

(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an

adverse employment action; and (4) the circumstances give rise to an inference of discrimination."

<u>Hongyan Lu</u>,  412 Fed.Appx. at  415.  With respect to the fourth prong of the *prima facie*

standard,"[a] showing of disparate treatment - that is, a showing that the employer treated plaintiff

'less favorably than a similarly situated employee outside his protected group' - is a recognized

method of raising an inference of discrimination for purposes of making out a *prima facie* case."

Mandell v. County of Suffolk , 316 F.3d 368, 379 (2d Cir. 2003).

AVI argues that "[p]laintiff's race discrimination claim fails as a matter of law because she was not qualified for her job and she was not treated less  favorably than individuals outside her protected class. . . . [and] lacks evidence of pretext" AVI's Memorandum of Law [51-1], p. 24.   In response, plaintiff relies on Kelly Casey's time slips, which lists her job description as VA Supervisor, to argue that "[e]ven if working overtime . . . was an essential function of the Office Manager position . . . that Ms. Casey - a Caucasian who is much younger than [plaintiff] - was allowed to act as the Office Manager without spending at least 40 hours/week working in that role, creates an inference of age and race discrimination which is at least sufficient to withstand summary judgment."  Plaintiff's Memorandum of Law [78], p.16.

AVI responds that Ms. Casey's time sheets are inadmissible evidence and that plaintiff has failed to offer any other admissible evidence supporting her belief that her replacement was permitted to perform the Office Manager position without working overtime. AVI's Reply Memorandum of Law [85], pp. 11-12.  It also relies upon the Second Declaration of Mark Stworzydlak [85-1], in which he explains that Ms. Casey was reassigned  to solely perform Office Manager duties while plaintiff was out on medical leave and continued in this position until she was formally reassigned to the Office Manager position in March 2009.

AVI's argument that Ms. Casey's time sheets constitute unauthenticated inadmissible evidence is unfounded, given that it produced these documents during discovery and does not contest their authenticity. *See* John Paul Mitchell Systems v. Quality King Distributors, Inc., 106 F.Supp.2d 462, 472 (S.D.N.Y. 2000) ("[T]he act of production implicitly authenticated

the documents. 'Just as [the defendant] could have identified the records by oral testimony, his very act of production was implicit authentication'").[5]   Nevertheless, standing alone, these records do not support an inference of discrimination.

Even assuming that during this time period Ms Casey was filling in as the Office Manager and also performing her regular duties as the VA Supervisor, it is evident that  following her job title change to Office Manager in March 2008, she regularly worked more than eight hours per day, as did plaintiff prior to her termination, thereby evidencing that Ms. Casey was not treated more favorably than plaintiff.  Plaintiff's Exhibit 12 [70], ## AVI 1121.  Therefore, I recommend that AVI's motion to dismiss plaintiff's Title VII race discrimination claim be granted.


## F.    Plaintiff's HRL Claim

"The law governing [Age Discrimination in Employment Act ("ADEA")] claims has been held to be identical to that governing claims made under the NYHRL." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 n.6  (2d Cir. 2010).  "In order to establish a prima facie case of age discrimination, [plaintiff] must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and

---

[5]        *Compare with* Jay Dees Inc. v. Defense Technology Systems, Inc., 2008 WL 4501652 (S.D.N.Y. 2008) cited by AVI. [85], p. 12.  In Jay Dees, the court held that an unauthenticated brokerage statement produced by the plaintiff in opposition to the defendants' summary judgment motion was inadmissible, where the plaintiff "claims to have discovered the [brokerage] statement in a ski bag years after this litigation began and has been unable to locate any other document concerning his [brokerage] account, despite claims that he traded hundreds of thousands of dollars with that brokerage. Moreover, . . . the clearing firm for [the brokerage] . . . has no record of an account in the name of [the plaintiff]".  2008 WL 4501652, at *2, *7.

(4) that such action occurred under circumstances giving rise to an inference of discrimination." Id. at 107.

      The parties repeat their arguments directed at plaintiff's Title VII claims.  AVI's Memorandum of Law [51-1], pp.33-34; Plaintiff's Memorandum of Law [78], pp.15-16. Therefore, for the same reasons I recommend dismissal of plaintiff's Title VII claims, I recommend dismissal of her HRL claims alleging age discrimination.[6]

## G.     Plaintiff's FMLA Claim

      "The FMLA entitles eligible employees to take up to twelve weeks of leave per year in order to care for a spouse, parent, or child of the employee that has a serious health condition or for the employee's own 'serious health condition that makes the employee unable to perform the functions of [her] position.'" Yanklowski v. Brockport Central School District, 2011 WL 2473098, *1 (W.D.N.Y. 2011)(Larimer, J.) (quoting 29 U.S.C. §§2612(a)(1)(c), 2612(a)(1)(D), 2612(b)). "Upon returning from leave, the employee is 'entitled' to return to the position she held prior to taking leave, though this right is not absolute." Pearson v. Unification Theological Seminary, 785 F.Supp.2d 141  (S.D.N.Y. 2011). Under the FMLA it is  unlawful "'for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter,' 29 U.S.C. §2615(a)(2), or 'for any person to discharge . . . any individual because such individual . . . has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter. . . .' 29 U.S.C. §2615(b).  The

---

[6]     Although AVI notes that a co-worker made a comment that Ms. Casey was "young and vibrant",  AVI's Memorandum of Law  [51-1], p. 33, plaintiff does not rely upon this comment in her opposition to AVI's motion for summary judgment.

Second Circuit recognizes a distinction between claims which allege a violation of §2615(a)(1)—so-called 'interference' claims—and claims which allege violations of §2615(a)(2) and (b), which are called 'retaliation' claims." <u>Voltaire v. Home Services Systems, Inc.</u>, 2011 WL 4710852, *13 (E.D.N.Y. 2011). Plaintiff appears to assert both retaliation and interference claims.

### 1. Interference

"In order to state a *prima facie* claim for interference under the FMLA, plaintiff must demonstrate that (1) he was an eligible employee under the FMLA; (2) defendant is an employer under the FMLA; (3) plaintiff was entitled to leave under the FMLA; (4) plaintiff gave notice to defendant of his intention to take leave; and (5) plaintiff was denied benefits to which he was entitled under the FMLA." <u>Yanklowski v. Brockport Central School District</u>, 2011 WL 2473098, *1 (W.D.N.Y. 2011)(Larimer, J.).

AVI argues that the undisputed evidence establishes that she was terminated after her FMLA leave expired  because she was unable to perform her job as Office Manager within her restrictions. AVI's Memorandum of Law [51-1], pp.30-32. In response, plaintiff argues that working more than eight hours per day was not an essential function of her position. Plaintiff's Memorandum of Law [78], pp.16-17.

"If the employee is unable to perform an essential function of the position because of a physical or mental condition, . . . the employee has no right to restoration to another position under the FMLA." 29 CFR §825.216(c). As discussed above, plaintiff was unable to perform an essential function of her Office Manager position at the time she was cleared to return to work,

with restrictions, by her physician.  Therefore, I conclude that she was not entitled to reinstatement

to her position under the FMLA.

### 2.      Retaliation

"Unlike interference claims, . . . retaliation claims under the FMLA are subject to

the _McDonnell Douglas_ burden shifting analysis. . . . In order to show a *prima facie* case,

[plaintiff]  must show (1) she exercised rights protected under the FMLA; (2) she was qualified for

her position; (3) she suffered an adverse employment action; and (4) the adverse employment

action occurred under circumstances giving rise to an inference of retaliatory intent." Pearson, 785

F.Supp.2d 141 (S.D.N.Y. 2011) (*citing* Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir.

2004)).

AVI argues that plaintiff "lacks evidence that her termination has anything to do

with her FMLA leave or that AVI's reason for terminating her was a pretext for FMLA retaliation."

AVI's Memorandum of Law [51-1], p.31.  In response, plaintiff argues that AVI effectively

terminated plaintiff by refusing to permit her to return to work while she was on FMLA leave and

that its "blanket policy of prohibiting employees on leave . . . from returning to work with any

restrictions" creates a genuine issue of fact concerning pretext.  Plaintiff's Memorandum of Law

[78], pp. 17-18.

There is no evidence in the record that plaintiff was terminated from her

employment with AVI prior to January 9, 2008, the day after her FMLA leave expired.  Although it

did not permit plaintiff to return to work during her FMLA leave, it had no obligation to so because

she was unable to perform the essential functions of her Office Manager position, namely working more than eight hours per day. Harris Declaration [52-16], ¶13.

Plaintiff has offered no evidence that AVI's decision to terminate her was for any reason other than her inability to perform the essential functions of her position.  Even though her termination occurred promptly upon the expiration of her FMLA leave, "the proximity of Plaintiff's termination is insufficient, in and of itself, to support her retaliatory discharge claim." Bond v. Sterling, Inc., 77 F.Supp.2d 300, 305 (N.D.N.Y.  1999).[7]

For these reasons, I recommend that plaintiff's FMLA claims be dismissed.


## CONCLUSION

For these reasons, I recommend that AVI's motion for summary judgment [51] be granted.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by December 23, 2011 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

---

[7]     AVI also argues that plaintiff's FMLA claims are time barred because she lacks evidence of willfulness.  AVI's Memorandum of Law [51-1], p. 32. However, I need not address this argument given my recommendation to dismiss plaintiff's FMLA claims on the merits.

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

   The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

DATED:  December 6, 2011


       /s/ Jeremiah J. McCarthy
       JEREMIAH J. MCCARTHY
       United States Magistrate Judge