UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BARBARA D. BAKER,

      Plaintiff,

  v.                                          10-CV-159
                                              DECISION AND ORDER
AVI FOOD SYSTEMS, INC.,

      Defendant.

_____

The plaintiff, Barbara D. Baker, brought this suit under the Family and Medical Leave Act of 1993, 29 U.S.C. Section 2611 ("FMLA"); the Americans with Disabilities Act, 42 U.S.C. Section 12101 (2008) ("ADA"); Title VII of the Civil Rights Act, 42 U.S.C. Section 2000-e (1964) ("Title VII"); and the New York State Human Rights Law, N.Y. Exec. Law Section 290 ("HRL"), alleging employment discrimination. Docket Item 36. Specifically, she claims that the defendant, AVI Food Systems, Inc. ("AVI"), unlawfully terminated her employment following a leave of absence due to a disability. *Id.* AVI contends that it fulfilled its FMLA obligation by providing the leave of absence and that it was not required to reinstate Baker's employment both because Baker could not perform the essential functions of her job and because Baker did not qualify for statutory protection. Docket Item 51-1.

The Court (Hon. Richard J. Arcara) referred this case to Magistrate Judge Jeremiah J. McCarthy for all matters pursuant to 28 U.S.C. Section 636(b)(1)(A), (B), and (C). Docket Item 6. At the conclusion of discovery, Docket Item 48, the defendant moved for summary judgment, Docket Item 51. The parties briefed the motion, Docket

Items 51-52, 58, and 85, and Judge McCarthy heard oral argument, Docket Item 86. After Judge McCarthy issued a Report and Recommendation ("R&R") finding that the defendant's motion for summary judgment should be granted, Docket Item 87, the case was transferred from Judge Arcara to the undersigned, Docket Item 99. For the following reasons, this Court adopts Judge McCarthy's R&R and grants AVI's motion for summary judgment.

## **FACTS**[1]

AVI hired Baker, a forty-six year old African-American woman, as office manager for the AVI branch in Buffalo, New York, on March 13, 2006. Docket Item 87 at 1. In early October of the following year, Baker suffered a herniated disc in her back, and the resulting pain qualified her for a leave of absence under the FMLA. *Id.* That leave began on October 16, 2007, and continued through January 8, 2008.[2] *Id.* at 1-2.

Under an AVI company policy, if an employee were restricted from work in a way that "prevented [her] from performing [her] full job duties following the exhaustion of FMLA" leave, the employee would be terminated "unless the restrictions stemmed from a work-related injury or the employee was disabled under the ADA or applicable state

---

[1] This Court accepts Judge McCarthy's statement of facts, which is well supported by the record and which is not colored by technical objections. *See* Docket Item 87 at 4-6. For example, although Baker may not have responded or replied to AVI's statement of material facts as Fed. R. Civ. P. 56(c) and Local R. Civ. P. 56(a)(2) required, Fed. R. Civ. P. 56(e)(2), Judge McCarthy accepted AVI's facts only when they were supported by admissible evidence.

[2] The R&R states that the "12 weeks of FMLA leave expired on January 8, 2009." Docket Item 87 at 2. This is obviously a typographical error, as the 12 weeks of leave would have expired in 2008, not 2009. Docket Item 51-2 at 5.

law." *Id.* at 2. On December 26, 2007, Baker's doctor cleared her to return to work with restrictions. *Id.* at 1. Those restrictions, which were to remain in place until May 2, 2008, included bans on: (1) lifting items over 15 pounds; (2) "repetitive bending or twisting"; (3) sitting or standing in intervals over two hours; and, most central to this suit, (4) working more than eight hours each day. *Id.* at 1-2.

On January 2, 2008, before her leave expired, Baker tried to return to work. *Id.* at 2. According to AVI, however, Baker's position as office manager required her to work more than eight hours a day—something her injuries precluded. *See id.* Therefore, because Baker's injury was not work related, because AVI found that Baker was not disabled under the ADA, and because Baker could not meet the requirements of the job, she was not allowed to return to work pursuant to AVI's policy. *Id.*

Baker was officially terminated on January 9, 2008, the day after her FMLA leave ended.[3] *Id.* Although she was marked eligible for re-hire when she was terminated, Docket Item 52-16 at 4, there is no evidence that Baker pursued this option, Docket Item 52-4 at 25, 36. Indeed, she refused later offers of reemployment. *Id.* at 36.

Baker then filed a complaint with the New York State Division of Human Rights. Docket Item 87 at 3. On April 28, 2009, the Division of Human Rights determined that

---

[3] Baker argues that she was terminated prior to the expiration of her FMLA leave—on January 2, 2008—because she was prevented from returning to work on that day and because her health benefits were canceled. Docket Item 91 at 5-6; Docket Item 58 at 17. But Baker was properly prevented from returning to work because, as addressed below, she was not qualified for the position. Furthermore, AVI admitted that the health-benefit change was an error—an error that was corrected. Docket Item 52-16 at 4. That brief mistake did not retaliate against Baker for taking FMLA leave nor did it interfere with her rights. For these reasons, Baker's employment was terminated not on January 2 but rather the day after her FMLA leave expired—January 9, 2008.

"there was no probable cause to believe that AVI discriminated against plaintiff on the basis of race or her alleged disability." *Id.*

Around the same time, in a separate and unrelated matter, the Equal Employment Opportunity Commission ("EEOC") sued AVI in the United States District Court for the Southern District of Ohio. *Id.* On July 28, 2009, the court in that action approved a consent decree. *Id.* That decree applied to those "separated from employment with AVI since April 11, 2006" after their FMLA leave expired, but who "(i) . . . were ready to return to work immediately . . . and (ii) could have performed the essential functions of the job without [sic] or without reasonable accommodation but (iii) were not allowed to return to work because they had medical restrictions." *Id.* Despite the fact that AVI claimed that Baker could not perform the essential functions of her job at the time of her separation, Docket Item 51-1 at 1, AVI included Baker among those covered by the consent decree, Docket Item 52-20 at 13. The consent decree afforded Baker the option of a $1000 cash award or returning to work; Baker chose the cash award.[4] Docket Item 87 at 3-4.

---

[4] Although a consent decree can bind parties, an EEOC consent decree that is not certified as a class action under Rule 23 does not bar an aggrieved employee from bringing a separate lawsuit. *E.E.O.C. v. Federal Express Corp.*, 268 F. Supp. 2d 192, 201-02 (E.D.N.Y. 2003). The consent decree here was between the EEOC and AVI; Baker was not a named party, and the suit was not certified as a class action under Rule 23. Docket Item 51-2 at 7. Because the EEOC was thus unable to "stand in [Baker]'s shoes," her interests were not represented by the consent decree and thus, contrary to AVI's assertion, the consent decree does not preclude this suit under the doctrine of *res judicata*. *See E.E.O.C.* v. *Waffle House Inc.*, 534 U.S. 279, 297 (2002).

## DISCUSSION

**I.  LEGAL STANDARDS OF REVIEW**

    **A.  Report and Recommendation**

A district court may accept, reject, or modify, in whole or in part, the findings or recommendation of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Because Baker objected to the R&R, Docket Items 90-91, this Court reviews it *de novo*.

    **B.  Summary Judgment**

AVI moved for summary judgment on the basis that overtime is an essential function of the office manager position—a function that Baker could not perform, making her unqualified for the job. Docket Item 51-1 at 1-2.

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing whether a genuine dispute exists, "the benefit of all permissible inferences and all credibility assessments" are drawn in favor of the non-movant. *SSEC v. Sourlis*, 851 F.3d 139, 144 (2d Cir. 2016). Summary judgment is appropriate only if a reasonable factfinder could not find for the party opposing summary judgment. *Id.* (citing *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962)).

## II. BAKER'S CLAIMS

Baker claims that AVI interfered with her FMLA rights and retaliated against her for exercising those rights; that she was discriminated against because of a disability in violation of the ADA; that she was discriminated against because of her race in violation of Title VII of the Civil Rights Act; and that she was discriminated against because of her age in violation of the HRL. Docket Item 36.

Although Baker raises several claims arising under several statutes, all the claims share a common thread. To bring a viable FMLA, ADA, Title VII, or HRL claim, a plaintiff must be qualified for the position. *See Yanklowski v. Brockport*, 794 F. Supp. 2d 426, 428 (W.D.N.Y. 2011) (requiring the plaintiff to be qualified for the position to establish a FMLA interference claim); *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (requiring the plaintiff to be qualified for the position to establish a FMLA retaliation claim); *Shannon*, 332 F.3d at 99 (requiring the plaintiff to be qualified for the position to establish an ADA discrimination claim); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) (applying a burden-shifting framework to Title VII race discrimination claims that instructs a plaintiff first to prove that he or she was qualified for the position); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106-07 (2d Cir. 2010) (incorporating the *McDonnell* burden-shifting framework in an HRL age-discrimination claim).

The question of whether an employee is qualified for the position turns on whether that employee can perform the "essential functions" of the job. In other words, if an employer terminates an employee who is unable to perform an essential function of the employee's position, any discrimination claim by the employee under the FMLA, ADA, Title VII, or HRL will fail. *See* 29 C.F.R. Section 825.216(c) ("If the employee is

6

unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA."); *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (noting that a prima facie case of disability discrimination under the ADA requires the plaintiff to show that he or she was "otherwise qualified to perform the essential functions" of the position with or without a reasonable accommodation); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (requiring plaintiff to be qualified for the position to establish a Title VII discrimination claim); *Gorzynski*, 596 F.3d at 106-07 (requiring the plaintiff to be qualified for the position to establish an HRL discrimination claim).[5]

Judge McCarthy found that Baker was not qualified for the job because working overtime—that is, more than eight hours a day—was an essential function that she could not perform, a finding that precluded her discrimination claims. Docket Item 87 at 19. Baker objected to that finding, Docket Item 91 at 2-4, but both sides agree that

---

[5] Unlike the case law in matters involving the FMLA and ADA, the case law for Title VII and the HRL does not commonly use the term "essential function" to assess a discrimination plaintiff's qualifications. When a function is truly essential to the job, however, and is not a pretext for discrimination, the ability to perform that function necessarily dictates whether the individual is qualified for the position, as required to make out a prima facie case of discrimination. *See Farias v. Instructional Systems, Inc.* 259 F.3d 91, 98 (2d Cir. 2001) (listing "satisfactory job performance" as a requirement for a prima facie Title VII case); *White v. Connecticut Dep't of Children & Families*, 544 F.Supp.2d 112, 118 (D. Conn 2008) (finding a Title VII plaintiff not qualified for the job because of physical limitations). Here, because Baker's ability to perform the job of office manager is at issue, and because Baker herself and both Baker's predecessor and successor worked overtime, working overtime is not a pretext for discrimination but rather a requirement for the position at issue. *See infra* pages 11-12. The inability to perform that requirement would make someone unqualified for that position.

7

Baker could not work more than eight hours each day.  Docket Item 51-2 at 6; Docket Item 58 at ¶ 70.  Therefore, Baker's legal claims boil down to a single issue: whether working overtime is an essential function of the office manager position.

## III. THE OFFICE MANAGER POSITION AT AVI

### A. "Essential function"

An "essential function" is one that is a "fundamental job dut[y] of the employment position the individual with a disability holds or desires . . . [and] does not include the marginal functions of the position."[6]  29 C.F.R. § 1630.2(n)(1); 29 C.F.R. § 825.200(a)(4) (stating that a recognized reason for taking FMLA leave is "[b]ecause of a serious health condition that makes the employee unable to perform one or more of the essential functions of his or her job").  Essential functions can include tasks (1) that are the primary purpose of the position, (2) that can be performed only by a limited number of available employees, or (3) that are highly specialized, requiring some expertise.  *See* 29 C.F.R. § 1630(n)(2)(i)-(iii).  Although courts should give deference to the employer's "determination as to what functions are essential," they also "must conduct [their own] 'fact-specific inquiry.'"  *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013).

In deciding whether a function is essential, courts should be guided by the totality of the circumstances, *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 120

---

[6] *The Family and Medical Leave Act, the Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964 Fact Sheet*, The U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/policy/docs/fmlaada.html (last modified July 6, 2000) (advising the FMLA rule incorporates by reference the ADA definition of "essential functions.").

(2d Cir. 2004), but should weigh such factors as: (1) the employer's determination of the function as essential; (2) "written job descriptions prepared before advertising or interviewing applicants for the job"; (3) actual time spent on that function; and (4) the predecessor's and successor's experience with that function. *See McMillan*, 711 F.3d at 126; *see also* 29 C.F.R. § 1630.2(n)(3)(i)-(vii) (listing additional considerations, including some that are irrelevant here).

Baker argues that the first two factors listed above should be weighed more heavily than the third and fourth factors. *See* Docket Item 91 at 2-4. In the Second Circuit, however, greater weight is often given to third and fourth factors, as they evidence how the job was actually performed. *See McMillan*, 711 F.3d at 126; *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997). Actual time on the job and the experience of predecessors and successors to Baker's position therefore are the more important considerations for this Court's analysis. *See id.*

### B.     Overtime and the office manager position

When the demands of a job routinely require overtime work, some courts have held that overtime can constitute an essential function of the job. *See Zaborowski v. Sealright Co.*, 2002 WL 1585521, at *4 (N.D.N.Y. July 9, 2002) citing *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305–06 (11th Cir. 2000); *see also Tardie v. Rehab. Hosp.*, 168 F.3d 538, 543-44 (1st Cir. 1999) (finding that working overtime is essential for the position of shipping supervisor of a packing company because the regular weekly work hours climbed from fifty to seventy hours during the plaintiff's tenure despite payroll designating a forty-hour work week). The question, then, is whether the

9

totality of the circumstances colored by the factors noted above make overtime an essential function of the AVI office manager position.

### 1. The employer's determination

AVI has asserted that working overtime is essential to the office manager position because the office manager is responsible for duties that no other staff member shares, including: staffing phones, being available in the office to address problems, and generally orchestrating the office to be able to meet customer demands. Docket Item 51-1 at 29-30. According to AVI, all that takes one person longer than eight hours a day. AVI's opinion is not controlling, of course, but it should be given some deference. *McMillan*, 711 F.3d at 126. The first factor therefore weighs in favor of finding overtime to be an essential function of the office manager position.

### 2. Written job description

Baker correctly notes that the written description of the office manager position did not include overtime as an essential function. Docket Item 61. AVI does not disagree but rather claims that Baker was told in the job interview that the position involved overtime work. Docket Item 85 at 15. Baker disputes this, however, asserting that during her interview AVI did not explicitly tell her that overtime was essential but instead told her "that she would only 'occasionally work some overtime.'" Docket Item 91 at 3 (internal brackets omitted). Viewing this evidence in the light most favorable to Baker, the second factor weighs against finding that overtime is an essential function of the position and in favor of Baker.

### 3. Work experience—before, during, and after Baker's termination

The third and fourth factors are the most important factors, *see McMillan*, 711 F.3d at 126, because they address the actual work pattern and experience of the plaintiff, Baker; her predecessor, Sarahann Stroka; and her successor, Kelly Casey. And those factors point decidedly toward overtime being an essential function of the job.

Baker herself worked overtime ninety-one percent of her workdays. Docket Item 87 at 18. Stroka worked overtime ninety-three percent of her workdays. *Id.* Casey worked overtime ninety-five percent of her workdays. *Id.* So Baker's own experience—as well as the experience of Stroka and Casey—demonstrate that overtime indeed was essential to her job.

Baker argues that because Casey retained her "VA Supervisor" title while covering Baker's office manager duties, Casey was doing work for both positions simultaneously. Docket Item 91 at 3-4. She therefore argues that Casey's work—and therefore Casey's overtime—included supervisory duties and was not for the office manager position alone. *Id.* But that argument—based on nothing more than Casey's title—is a non sequitur. The evidence in the record demonstrates that Casey's work as a VA supervisor was handled by other co-workers when Casey took over the duties of office manager. Docket Item 87 at 22-23. What is more, after Casey became the permanent office manager and gave up her VA Supervisor title, she still worked overtime ninety-five percent of the time. *Id.* at 18. So even giving Baker the benefit of the doubt, there is no basis upon which to conclude that Casey did not routinely work overtime on office manager tasks even while retaining the VA Supervisor title.

As a practical matter, the AVI office manager worked overtime almost all the time. The fact that AVI may have estimated overtime to be required only "occasionally" when Baker interviewed for the position does not change that. And the deference due to the employer's determination of what functions are essential makes that conclusion even clearer. The statutory factors therefore support Judge McCarthy's finding that overtime is an essential function here.

In sum, based on the totality of the circumstances, working overtime was an essential function of Baker's job at AVI. Baker nevertheless argues that other Second Circuit precedent precludes summary judgment. But that argument is misguided.

### C. *Rodal v. Anesthesia Group of Onondaga*

In both her opposition to AVI's summary judgment motion and in her objections to Judge McCarthy's R&R, Baker relies heavily on the Second Circuit's decision in *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113 (2d Cir. 2004). Docket Item 78 at 14; Docket Item 91 at 4. Based on *Rodal*, Baker argues that accommodations provided by AVI prior to this suit demonstrate that overtime really was not essential to her job. *Id.* But Baker misreads *Rodal*.

The plaintiff in *Rodal* routinely worked extra shifts at night and on weekends; after he was diagnosed with cancer, however, his employer allowed him to work only regular shifts on weekdays. 369 F.3d at 116-17. The plaintiff made a full recovery and later resumed night and weekend shifts, but it soon became clear that he could not continue to work at the same pace. *Id.* at 117. Therefore, according to the plaintiff, he again asked for the same schedule modification that had been made earlier; the defendant, on the other hand, denied that it ever received the plaintiff's second request

for an accommodation.  *Id.* at 117, 120.  In any event, after the plaintiff did not get an answer, he took disability leave.  *Id.* at 117.

The plaintiff then sued his employer, seeking compensatory and punitive damages because his employer did not accommodate his disability.  *Id.*  The district court granted summary judgment to the employer, but the Second Circuit reversed, finding that the district court erred in holding, as a matter of law, "that night and weekend duty constituted an essential function of [the plaintiff's] job."  *Id.* at 121.  The Second Circuit noted that the employer had accommodated the plaintiff's request to be relieved of night and weekend duty years before and that there was evidence in the record that another such accommodation would have been granted had the plaintiff requested one.  *Id.*

In fact, the dispute in *Rodal* really hinged on whether the plaintiff had requested the schedule accommodation a second time.  *Id.*  The defendant admitted that the earlier schedule modification would have become permanent if the plaintiff had agreed with the employer on the issue of compensation and that the schedule modification would have been made a second time if the employer actually had received the plaintiff's second request.  *Id.*  The Second Circuit assumed for the purposes of the summary judgment motion that the evidence in fact demonstrated that the plaintiff had made the request.  *Id.* at 120.  Under those circumstances—where the employer conceded that a schedule modification was a viable accommodation for the plaintiff—it was error for the district court to conclude as a matter of law that working nights and weekends was an essential function of the plaintiff's job.  *Id.* at 121.

Unlike the employer in *Rodal*, AVI never made similar concessions or granted prior accommodations. Here, in contrast to *Rodal*, Baker and her immediate predecessor and successor worked overtime more than nine out of ten days. So while in *Rodal* there was good reason to believe that the additional work was not really essential, here there is no reason to believe that—and every reason to believe just the opposite.

Baker argues that because she worked more than eight hours each day only ninety-one percent of the time, the employer must have accommodated her the other nine percent of the time. *See* Docket Item 91 at 4. But the assertion that AVI *accommodated* Baker's inability to work more than eight hours nine percent of the time is speculation without supporting evidence. And the suggestion that what an employee does ninety-one percent of the time is not "essential" is illogical as well. The fact that Baker's predecessor worked overtime more than ninety-three percent of the time, and that Baker's successor did so ninety-five percent of the time, underscores the point that working overtime is an essential function.

Baker's argument misses the point of what constitutes an essential function. If an employee is required to work overtime ninety-one, ninety-three, or ninety-five percent of the time, then the employer may have to hire an assistant for the employee—or make some other inefficient and more expensive adjustment—to accommodate someone who cannot work overtime. In *Rodal*, that clearly was not the case: the employer had accommodated the employee's request not to work overtime before and was willing to do it again; the only sticking points were compensation for the employee and paperwork. Here, there was no such prior accommodation, nor was there any

14

willingness to accommodate. In *Rodal*, overtime was not an essential function of the job; here, it is.

## **CONCLUSION**

In light of the frequency with which Baker, her predecessor, and her successor worked overtime, as well as AVI's own determination that overtime was essential to the office manager position, this Court finds that overtime was indeed an essential function of Baker's position as office manager. Because Baker could not perform that function, this Court also finds that she was not qualified for reinstatement to the office manager position. AVI therefore was entitled to terminate Baker's employment, and this Court adopts Judge McCarthy's R&R on Baker's FMLA, ADA, Title VII, and HRL claims.

For the reasons stated above and in the R&R, this Court GRANTS AVI's motion for summary judgment.

SO ORDERED.

Dated:    December 27, 2017
         Buffalo, New York


                                            *s/Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE